**In the Interest of D.W., A Child.**

**No. 06–11–00064–CV.**

Court of Appeals of Texas, Texarkana.

Submitted: Oct. 20, 2011.

Decided: Nov. 18, 2011.

---

Judy Hodgkiss, The Moore Law Firm, LLP, Paris, for appellant.

Michael C. Shulman, Office of General Counsel, Austin, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

Della [1] appeals from the termination of her parental rights to her three-year-old son, D.W., contending that the trial court erred (1) by denying her motion for new trial, (2) by denying a motion for continuance filed on her behalf, and (3) by severing her case from the case seeking to terminate the biological father's parental rights. She also contends that the evidence is insufficient to support termination. We find no error and affirm.

The record in this case shows that although Della is a person biologically capable of bearing a child, she is mentally of such a low level of intelligence as to be incapable of effectively rearing one. She is not merely below average intelligence; the evidence is that she is at such a low level that she could at most care for the direct physical needs of an infant, but could not act as a mother for the child beyond that point. She failed to consis-

tently maintain contact with the Child Protective Services Division of the Texas Department of Human Services (the Department or CPS) after her child was in its custody, did not visit the child for months while the child was in the custody of CPS (although provided with transportation to the child's location), and although she did live in one site for five months, she otherwise moved from place to place in a random fashion, lodging in eight different places during the course of this proceeding. She did not know the last name of the biological father of the child, and only completed portions of various programs and counseling that the Department made available for her. After her then-boyfriend represented to her that the child suffered from sickle cell anemia (an untrue representation) and that she was unequipped or unable to care for him, she voluntarily surrendered the child to others following an emergency room visit.

## Denial of Motion for New Trial—Notice of and Opportunity to Attend Trial

In her first point, Della contends that the trial court abused its discretion in refusing to grant her motion for new trial. Della sought a new trial based upon the fact that she was not personally present at trial. Although proper notice of the setting for trial was provided to her court-appointed attorney, Della failed to maintain contact with her counsel, rendering her lawyer unable to give her actual notice (either in person or by telephone) of the trial setting. Neither her trial counsel nor investigators could locate her, and she remained uninformed that the case was set for a final hearing on the merits. Della was finally located only after the trial had taken place and a motion for new trial (based upon the fact that she had not been provided actual notice of the docketing of

1. A pseudonym, employed to aid in protecting the identity of the child.

the matter for a trial on the merits) had been filed.

■ Generally, determining whether to grant or deny a motion for new trial is a matter which falls within the sound discretion of the trial judge. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009); *In re C.J.O.*, 325 S.W.3d 261, 267 (Tex.App.-Eastland 2010, no pet.). For the most part, a party is entitled to a new trial when her failure to appear is due to a failure to receive notice of the trial setting. Tex.R. Civ. P. 245; *In re A.D.A.*, 287 S.W.3d 382, 387–88 (Tex.App.-Texarkana 2009, no pet.); *Vela v. Sharp*, 395 S.W.2d 66, 67–68 (Tex.Civ.App.-San Antonio 1965, writ ref'd n.r.e.). This is generally true regardless of whether her attendance would affect the ultimate outcome of the hearing.

■ However, once a party has made an appearance, she has the responsibility to keep the court and her own counsel apprised of a location where such notice can be effected. In this case, there is a considerable amount of evidence provided about Della's location and her moves from one location to another. It is clear, however, that she ultimately did not provide her final address to either the court or to her counsel. Rule 8 requires all communications from the court or other counsel with respect to a suit to be sent to the attorney in charge, a practice that was followed in this case. *See* Tex.R. Civ. P. 8. Indeed, neither the trial court nor the clerk may communicate directly with a party who is represented by counsel. *Withrow v. Schou*, 13 S.W.3d 37, 40 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The notice requirements of Rule 245 are therefore satisfied by serving the attorney of record. Tex.R. Civ. P. 21a, 245; *Bruneio v. Bruneio*, 890 S.W.2d 150, 155 (Tex.App.-Corpus Christi 1994, no writ). An attorney's knowledge of a trial setting is imputed to his client. *Magana v. Magana*, 576 S.W.2d 131, 133 (Tex.Civ.App.-Corpus Christi 1978, no writ).

When efforts were made by Della's counsel to contact her by written and telephonic means, Della could not be reached at the address last known to her attorney. To compound the immediacy of maintenance of the setting date, this is yet another case in which the State was faced with a "drop dead" date upon which the case either had to be tried or dismissed. *See* Tex. Fam.Code Ann. § 263.401 (West 2008). Trial courts have no discretion to provide more time than that specified by the Legislature, irrespective of how appropriate or reasonable a judge might deem it appropriate to do so. Under these facts, we cannot conclude that the trial court abused its discretion by denying the motion for new trial.

**Continuance**

■ Della also contends that the court abused its discretion by denying her motion for continuance. We review the denial of a motion for continuance for an abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). Unless the record discloses a clear abuse of that discretion, the trial court's action in granting or refusing a motion for continuance will not be disturbed. *Id.* In deciding whether a trial court has abused its discretion, we do not substitute our judgment for the trial court's judgment, but decide only whether the trial court's action was arbitrary and unreasonable. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986). We will not reverse the ruling unless the record clearly shows a disregard of a party's rights. *Id.; Rodriguez v. Cuellar*, 143 S.W.3d 251, 260 (Tex.App.-San Antonio 2004, pet. dism'd).

■ In this case, counsel filed a motion for continuance on the first day of

trial (April 7), asserting that she did not know Della's whereabouts and thus was unable to talk with her and that her presence at trial was vital to her case. Nevertheless, it remained the party's responsibility to make herself available and her whereabouts known to her counsel; it is apparent that Della failed to do so. We recognize that Della's mental shortcomings almost surely contributed to her failure to maintain contact with her attorney. That, nevertheless, does not legally excuse the party from her responsibilities to herself or her child.

We take into account that an action for the termination of parental rights is a type of action recognized as having extraordinary consequences and an effort to terminate parental rights involves "a fundamental liberty interest" of the parent. *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). If anything, that makes the need to maintain communications more important, and the failure to do so has consequences. The resultant consequences are unfortunate, but under the law, if Della wished to retain rights to her child, it was necessary for her to take the actions necessary to exercise those rights. Finally, as noted above, the dismissal date for the suit as mandated by statute was only about a month away (May 15) from the date of final hearing, but Della had been out of touch with her counsel since October of the preceding year; at the time preceding trial and at the time of trial itself, the investigator could not determine her whereabouts. Under these circumstances, we cannot conclude that the trial court abused its discretion by denying the request to continue the proceeding until a later date.

**Severance**

Della contends that the court abused its discretion by severing the pa-rental rights in the case against her from the parental rights termination case of the biological father. A severance splits a single suit into two or more independent actions, each action resulting in an appealable, final judgment. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex.1985). Severance of claims rests within the sound discretion of the trial court. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990) (op. on reh'g), *In re T.T.F.*, 331 S.W.3d 461, 477 (Tex.App.-Fort Worth 2010, no pet.).

In this case, except for the biological father's first name, his identity was unknown. An ad litem had been appointed to represent his interests. The court stated that the child had been born in Arkansas, but that no effort to determine whether the child's father's name appeared in the Arkansas paternal registry had been made. As jury selection concluded, a last name for a possible father appeared, but the status of that person, if any, remained unclear. The trial court noted both the short time remaining for the case to be brought to completion and the length of time that it had been pending already. After that observation, the trial court decided to sever the action against the mother from that of the potential father and to proceed.

Della suggests that the decision was outside the range of the court's discretion because a stated focus of the action was to clear the child for adoption, a predicate of which would be fully terminating the child's relationship with both parents. Counsel suggests that the fact-finder might have been improperly encouraged to

terminate the interests of the mother, knowing that shortly thereafter the father (if he could be identified) would likewise face the court. Clearly, availability for adoption was a major factor in the action. It is not, however, an improper factor, and it seems equally possible that a fact-finder might decline to terminate a mother when there is a chance that the father might not be later terminated—thus, the effect of severance could possibly have an impact in either direction. There is nothing, however, that suggests any improper effect to the extent that it would prevent severance from being available.

In addition, we remain cognizant of the short time frame remaining to complete the action, the lack of any statutory authority for the trial court to extend that timetable, and the lack of anything to indicate how promptly any putative father might appear before the court.

Completing the mother's portion of the proceeding served the State's and the child's interests in the prompt resolution of the matter, as well as the convenience of the parties and the court, thus meeting two purposes of severance. Although counsel argues prejudice occurred because of the severance, as discussed above, we do not agree. We do not find that the court abused its discretion by severing the case in twain.

### Sufficiency of Evidence to Meet the Statutory Requirements for Termination

■■■ Della next contends that the evidence is insufficient to support termination of the parent and child relationship. The standard of review in parental rights termination proceedings is clear and convincing evidence. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex.2002); *see* TEX. FAM.CODE ANN. § 161.001 (West 2011). The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established by the State. *In re C.H.,* 89 S.W.3d 17, 25–26 (Tex.2002). Along with a best interest finding, a finding of only one ground alleged under Section 161.001(1) is sufficient to support a judgment of termination. *In re A.V.,* 113 S.W.3d 355, 362 (Tex.2003); *In re K.G.,* 350 S.W.3d 338 (Tex.App.-Fort Worth 2011, no pet. h.).

In reviewing the legal sufficiency of the evidence, we view all the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. TEX. FAM. CODE ANN. § 101.007 (West 2008); *J.F.C.,* 96 S.W.3d at 266; *C.H.,* 89 S.W.3d at 25. Looking at the evidence in the light most favorable to the judgment means that we must assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *J.F.C.,* 96 S.W.3d at 266.

■■■ When reviewing a factual sufficiency challenge to a parental rights termination, we consider the evidence that the fact-finder could reasonably have found to be clear and convincing. *See id.; C.H.,* 89 S.W.3d at 25–26. In applying this heightened standard to a trial court's findings, we ask whether there was sufficient evidence presented to produce in the mind of a rational fact-finder a firm belief or conviction as to the truth of the allegations sought to be established. *In re N.R.,* 101 S.W.3d 771, 774 (Tex.App.-Texarkana 2003, no pet.).

■■■ The State alleged five grounds for termination. We first examine the sole issue which the State argues on appeal as

supporting the judgment, Tex. Fam.Code Ann. § 161.001(1)(N). Under that statute, the court may order termination if the court finds by clear and convincing evidence that the parent

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
> > (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
> >
> > (ii) the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii) the parent has demonstrated an inability to provide the child with a safe environment; . . . .

It appears that the child was left by Della and her then-boyfriend with CPS at its offices on November 4, 2009. The then-stated reasons were connected with the erroneous belief that the child suffered from sickle cell anemia, together with Della's statements that she and her boyfriend had no water and no money and that they could not take care of the child. Della said that if the boyfriend believed they could not take proper care of the child, she would have to agree. Although the CPS worker offered various services to them and explained how they could obtain assistance, they nevertheless insisted on leaving the child with her anyway. By the time of trial on April 7, 2011, the child had been in the custody of the State for well over a year.

CPS workers set up a service plan for Della, including parenting classes and counseling sessions, which commenced in December 2009. A guardian ad litem was appointed for Della, who also attempted to assist her through the process. Della attended counseling regularly in January, but appeared only once in February. At that point, the representative talked with her, and she appeared three times in March. After that point, Della effectively stopped appearing and did not attend any sessions after April, except for one counseling appointment in July. Della and the boyfriend parted ways in July, after he pushed her through a window. She did attend her parenting classes and obtained a certificate.

Della did not visit the child for the first two months the child was in the State's possession, even though she was offered transportation for the visits (which she occasionally utilized), and the final time she visited with the child was in August 2010. Further, it appears that Della changed her residence at least eight times during that time period (three of those times without informing CPS of her location), although she remained in a single residence for five months of that time.

Counsel correctly points out that Della was not diagnosed with any mental disorders by the State's expert, Dr. James Harrison, a clinical psychologist. However, the expert also testified that as a result of his December 2009 testing and evaluations, he found some very understandable anxiety and depression and described Della's understanding of the role of parenting as limited to direct physical interaction with the child.

> [S]he's a very simple person; and so her understanding of parenting was pretty much to take care of her child physically, to play some with them—with him. She showed very little ability to talk about, understand, anything of complexity. So while she was probably capable of providing basic, physical care to a young child, anything that would arise that required difficult judgment, she was unable to do, to figure out, to talk about.

Harrison administered an intelligence test to Della because the question of mental retardation was clear. Della informed him that she had been diagnosed with mental retardation and was receiving disability. The categories of mental retardation as explained by the expert are, in ascending order, mild, moderate, profound, and severe, and Della was found to be at the very most challenged of the "mild" range.[2] The expert explained, "If you look at a thousand people, she would be the second most limited person in that population." He believed she would never be able to be employed or to continue with any type of education. He testified that she was unable to independently care for a child and could, at best, participate as a coparent with a competent healthy caregiver who assumed primary child caring responsibility. In summary, he believed she could not independently care for a child between two and eighteen years of age.

Harrison testified that Della was at

the level of mental retardation that I tell parents that they really need to take care of their kid all—for the rest of their life. And so, no, I don't think that she could take care of herself. She definitely could not independently take care of a child.

On cross-examination, he was asked if she needed a support system to be able to care for the child. Harrison carefully stated that it was more than that: she simply could not be trusted to provide competent care on her own, but needed someone who is capable of doing that, and that she could participate with that capable person. He recognized that although Della cared for the child, he was disturbed by her willingness to turn the child over to the State. He emphasized that her motivations and her desire to be a parent were not the

most critical thing for the child because even if she were perfectly motivated, she

still would have some severe limitations in her ability to do competent parenting. And at this point, this child probably is at risk for needing even more competent parenting than a regular person would have.

He also expressed his concern regarding Della's failure to attempt to take action to recover the child, at the same time also acknowledging that her mental frailties made her more likely to be compliant with authority and, thus, less likely to seek a different result than that propounded by CPS representatives. Summarizing and acknowledging that it was a painful statement to make, he opined that to give the child back to Della would be to award custody of a child who cannot take care of itself to an adult who was unable to take care of even herself.

Under this state of the evidence, we must conclude that the evidence is factually and legally sufficient to support termination pursuant to TEX. FAM.CODE ANN. § 161.001(1)(N).

**Best Interest of the Child**

The remaining issue is whether clear and convincing evidence established that termination was in the child's best interest. TEX. FAM.CODE ANN. § 161.001; *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex.2009). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *J.O.A.*, 283 S.W.3d at 344; *In re K.W.*, 335 S.W.3d 767, 770 (Tex.App.-Texarkana 2011, no pet.).

In reviewing the sufficiency of the evidence to support the best interest find-

---

**2.** The testing was all done orally, as written     questions were beyond her.

ing, we apply the factors set out in *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desire of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the plans held by the individual seeking custody for the child; (6) the stability of the home of the parent; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Id.*

The *Holley* factors are not exhaustive, and no single consideration is controlling, nor would the judge be required to consider each of the factors. *Id.* at 372; *K.W.,* 335 S.W.3d at 770. Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child, while on the other hand, the presence of scant evidence relevant to support each *Holley* factor will not support a finding. *C.H.,* 89 S.W.3d at 27.

**Analysis of *Holley* Factors Indicates Termination Was in the Child's Best Interest**

The child in this case is just past infancy and is, therefore, unable to articulate its desires, other than giving recognition to the fact that the child was happy while in his mother's presence. According to the testimony elicited, meeting the emotional and physical needs of the child (both now, as a three-year-old, and in the future, as he matures), are abilities beyond the capability of the mother. Similarly, her parental abilities, though undoubtedly well-intentioned, are so limited that she is effectively unable to meet those needs in any effective manner. Any emotional or physical danger to the child is likewise based upon her lack of ability to deal with the current and future stresses of a child evolving from infancy into childhood and ultimately to adulthood. The testimony uniformly shows that Della is unable to care for the child without the assistance of some person to assist her and give her direction.

There is no prospective adoptive parent waiting in the wings in this case; thus, there is no evidence directly applicable to the fourth or fifth *Holley* factor. The sixth factor leans in favor of the State, based on Della's serial lodgings while the child was in the State's custody. There is nothing to show that the parent-child relationship as currently exists in this case was improper and that factor likewise has no impact.

The final factor is any excuse for the acts or omissions of the parent. The excuse in this case is the lack of mental capacity of the parent. There is no evidence that Della's intentions are not good or that she is mean, uncaring, or addicted to drugs or alcohol. Rather, the evidence reveals her only shortcoming as a parent arises from her lack of mental capacity. However, it also appears that she has found (and will find) it relatively easy to move on with her life as demonstrated by Della's apparent lack of effort to visit with her child after the early stages of the proceeding. It also shows that for that same reason, she is entirely incapable of providing the nurture necessary for the child to thrive in the future. Nevertheless, regardless of the reasons (even though apparently entirely beyond her control) for her acts or omissions, they still exist and must be considered in determining the best interest of the child. We conclude that the evidence is legally and factually sufficient to allow a fact-finder to determine under the clear and convincing evidence standard that termination was in the best interest of the child.

We affirm the judgment of the trial court.