

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00038-CV

**IN THE INTEREST OF L.G.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02864
Honorable Charles E. Montemayor, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: July 8, 2015

AFFIRMED

Appellant mother ("Mother") appeals the trial court's order terminating her parental rights to her child, L.G. Mother does not challenge the sufficiency of the evidence to support the trial court's findings under section 161.001(1) of the Texas Family Code ("the Code"), but contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child. We affirm the trial court's order of termination.

### BACKGROUND

According to Mother, the Texas Department of Family and Protective Services ("the Department") first intervened in 2013 when it received a report of neglectful supervision with regard to her son L.G., an infant. Soon after, the Department filed its original petition. After a hearing, the trial court awarded the Department temporary managing conservatorship of the child

and granted Mother temporary possessory conservatorship. Mother was provided with a service plan, which she signed on February 3, 2014.

A status hearing and pretrial conference was held on February 13, 2014. Approximately two months after this hearing, a Bexar County probate court found Mother to be mentally incapacitated and appointed her cousin, A.G., as her legal guardian. After permanency hearings were held in June and September of 2014, the matter proceeded to a two-day bench trial in November and December of 2014. At the trial, five witnesses testified: (1) the psychologist who conducted Mother's psychological evaluation; (2) Mother's psychotherapist; (3) Mother's cousin and legal guardian; (4) the Department caseworker; and (5) a Child Advocates of San Antonio ("CASA") volunteer.

After the trial, the trial court ordered Mother's parental rights terminated, finding she: (1) failed to comply with the provisions of a court order that established the actions necessary for her to obtain the return of her child; and (2) used a controlled substance in a manner that endangered the health or safety of her child and (a) failed to complete a court-ordered substance abuse program, or (b) after completing a such a program, continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(O), (P) (West 2014). The trial court also found termination of Mother's parental rights would be in the best interest of the child. *See id.* § 161.001(2). Thereafter, Mother perfected this appeal.

## ANALYSIS

On appeal, Mother does not challenge the evidence with regard to the trial court's findings under section 161.001(1) of the Code. Rather, she contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child. Mother asserts the Department relied heavily on her intellectual development disability in seeking termination, but failed to tailor her service plan in consideration of her disability.

### *Standard of Review*

Under the Code, a court has authority to terminate a parent's rights to a child only upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(1) of the Code, and that termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). The Code defines "clear and convincing evidence" as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to a child implicates due process in that it results in permanent and unalterable changes for the parent and the child. *E.A.G.*, 373 S.W.3d at 140. Therefore, when reviewing a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's finding and judgment, and any disputed facts are resolved in favor of that court's findings if a reasonable fact finder could have so resolved them. *Id.* We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the trier of fact's findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### *Best Interests*

As set forth above, it is not enough for the trial court to find a parent committed an act prohibited by section 161.001(1) of the Code. Rather, for the trial court to terminate a parent's right to her child, the trial court must specifically find that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(2); *J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140.

### <u>*Applicable Law*</u>

In making a best interest determination, we may take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the

parent.  544 S.W.2d 367, 371–72 (Tex. 1976).  These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship.  *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest.  *Id.*

Although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues.  *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).  In conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence.  *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.) (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)).  Additionally, a fact finder may judge a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child.  *Id.*

Moreover, although we must accept the strong presumption that maintaining the parent-child relationship is in a child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam), we also presume that permanently placing a child in a safe environment in a timely manner is in the child's best interest.  TEX. FAM. CODE ANN. § 263.307(a) (West 2014).  In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider that factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or

other agency; (5) whether the child is fearful of living IN or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *see A.S.*, 2014 WL 5839256, at *2.

Finally, and as is particularly relevant in the matter before us, although the mental capacity of a parent alone may not support a trial court's termination order, it is probative on the issue of best interest. *See* TEX. FAM. CODE ANN. § 161.003 (outlining procedures for termination of parental rights based on mental illness or deficiency of parent); *In re D.W.*, 353 S.W.3d 188, 191, 197 (Tex. App.—Texarkana 2011, pet. denied) (considering mother's mental incapacity in determination whether termination was in child's best interest). A parent's mental issues are relevant to her ability to provide care for her child's needs — physical and emotional — throughout the child's life, which clearly goes to best interest. *See D.W.*, 353 S.W.3d at 197.

### *The Evidence*

In reviewing the evidence, we have considered the *Holley* factors as well those as set out in section 263.307(b) of the Texas Family Code. We have also considered Mother's mental incapacity, the acts or omissions under section 161.001(1) of the Texas Family Code as determined

by the trial court, as well as the circumstantial evidence, any subjective factors, and the totality of the evidence. *See A.S.*, 2014 WL 5839256, at \*2.

1. *Desires of the Child*

The evidence shows L.G. was removed from Mother when he was only days old. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. By the time of trial in November 2014, he was almost a year old. L.G.'s age makes it impossible for him to express his desires with regard to conservatorship and renders him vulnerable if left in the custody of a parent who is unable to attend to his obvious needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and mental and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. There was also some suggestion from certain testimony that L.G. suffers from certain developmental disabilities that would suggest vulnerabilities beyond his age. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

2. *Emotional & Physical Needs/ Emotional & Physical Danger/Parental Abilities*
   *Stability of Home or Placement/Plans for the Child*

As noted above, L.G. is an infant. As such, he will obviously require constant emotional and physical support. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. He is unable to care for himself in any way, dependent solely upon a caregiver for all his needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. This need for emotional and physical support will continue for many years. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

With regard to the potential emotional and physical danger to L.G. if he were to remain with Mother, as well as Mother's parenting abilities or lack thereof, the record is rife with evidence. Although Mother completed the parenting course as required by her service plan, her psychotherapist, Vincent Valdez, testified Mother admitted she took the ten-class course three or

four times before completing it.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11) (ability to effect positive changes within reasonable time); *id.* § 263.307(b)(12) (whether parent demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72.  And, despite these multiple attempts and ultimate completion of the parenting course, the CASA volunteer testified that during visitation with the child, Mother was unable to provide basic care for L.G.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  The CASA volunteer stated that during visitations she had to remind Mother on several occasions how to prepare a bottle, change a diaper, and console L.G.  *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  She said Mother was unable to recognize when L.G. needed to have his diaper changed.  *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  The volunteer noted that although L.G. was an infant and unable to stand, Mother would attempt to make him stand.  *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. According to the volunteer, Mother "was consistently looking at me for direction and redirection." *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Although the volunteer would remind Mother how to perform necessary tasks, it did not appear Mother could retain the information for use at subsequent visitations.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  In fact, in June 2014, the trial court, in a permanency hearing order, specifically found that visitation between Mother and L.G. "must be supervised to protect the health and safety" of the child.  *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  In sum, the evidence shows Mother is unable to care for L.G. without the assistance of some other person to assist her and give her direction.

The CASA volunteer also testified that Mother would lose her temper and become "volatile."  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.  The volunteer testified she saw holes in the wall of Mother's residence and was advised

by Mother's roommates that Mother created the holes by punching the walls. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother would call the volunteer on the phone when she was upset, yelling and threatening suicide. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The CASA volunteer stated that when Mother is angry, she becomes verbally and physically abusive, causing the volunteer concern for the child. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

There is evidence, according to the Department caseworker, Corel Garcia, that Mother showed some progress. Mother suggests she would have made more progress if Ms. Garcia had tailored a service plan to her specific needs given her mental incapacity. Mother argues she was not provided with services that would allow her to learn the necessary skills to provide for L.G.'s physical and emotional needs. However, the service plan states the Department will find Mother a therapist who will address her special circumstances and who is located close to Mother's home. It appears this was done. Both Ms. Garcia and the psychologist who performed Mother's evaluation spent additional time with Mother because of her mental issues. The psychologist, Dr. Aranda, testified he spent over five hours reading and reviewing documents with Mother. Ms. Garcia stated she made additional efforts to assist Mother with regard to her service plan. Specifically, Ms. Garcia explained the service plan requirements to Mother repeatedly and provided her with information about her service providers. Moreover, modifications were made to the service plan to allow Mother to complete services and reach the goals the services were intended to promote. Despite these additional efforts and modifications, Mother seemed unable to attain parenting goals.

The Department also produced evidence relating to potential child endangerment, now and in the future, based on Mother's admitted drug use and living arrangements. Drug use and a history

of drug abuse is relevant in a best interest determination. *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet.); *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). This same evidence is relevant to the stability of Mother's home.

Dr. Aranda, who performed Mother's psychological evaluation, testified that Mother told him she had a history of drug use — "ice, meth, cocaine, and heroin in the past" — as well as alcohol. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by parent or others with access to child's home); *Holley*, 544 S.W.2d at 371–72. Mother advised she would use controlled substances "every time it was around[,]" leading the doctor to believe she will continue to use drugs when they are available. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. Mother admitted to the doctor she has never attended any rehabilitation or substance abuse program. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. And, as late as October 21, 2014, Mother admitted to her psychotherapist, Vincent Valadez, that she was using marijuana on a daily basis. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mother also admitted to conceiving several children as a result of others taking advantage of her sexually when she was under the influence of drugs or alcohol — the record suggests these children were removed from Mother's custody. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Dr. Aranda opined that Mother's choices with regard to drugs placed her in danger, causing him concern with regard to Mother's ability to provide a safe environment for her infant son. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

The evidence regarding physical and emotional danger to L.G., as well as to the stability of Mother's home, continued with testimony relating to Mother's living arrangements. In the past, according to Ms. Corel, Mother's caseworker, Mother lived with her boyfriend, George, a man

named Luther, and a woman named Michelle. Ms. Corel testified George is a registered sex offender and Luther had been previously convicted for sexual assault of a child. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Luther was verbally aggressive toward the CASA volunteer, as well as Mother's guardian A.G. when she attempted to remove Mother from Luther's home. The woman, Michelle, was also verbally aggressive, making threats. Ms. Corel testified Mother identified these people as her support system. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Mother's legal guardian and cousin, A.G., testified she was responsible for finding Mother a safe place to live. Mother initially refused her assistance. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Eventually, A.G. was able to convince Mother to leave Luther's home, despite Luther's threats. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. A.G. rented a place for Mother, advising Mother that she had to keep certain people away from the residence, particularly Luther, who A.G. described as threatening and having a "big influence" on Mother. However, Mother continues to reside with her sex offender boyfriend, and told the CASA volunteer that she will never leave him. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The CASA volunteer testified Mother "absolutely" understood this meant her child would never be able to live with her. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

In contrast to Mother's living situation, the Department presented testimony regarding L.G.'s foster parents. According to the Department caseworker, L.G. is currently in a "foster adopt home." *See Holley*, 544 S.W.2d at 371–72. He is doing well and the foster parents provide a safe and stable home for L.G., taking care of all of his needs. *See id.* Ms. Garcia, the caseworker, testified the foster parents are willing to be a long-term adoptive placement in the event of

termination. *See id.* The evidence suggests that if Mother's rights are terminated, the Department intends to pursue adoption by the foster parents. *See id.* Additionally, although Mother's individual therapist testified Mother desires to regain custody of L.G., the CASA volunteer testified that Mother often fluctuated with regard to custody of L.G. In fact, the volunteer stated that during her last conversation with Mother, Mother said she wished for L.G. to remain with his foster parents.

3. *Available Programs/Acts or Omissions Indicating Relationship Not Proper/Excuses*

As noted above, the Department provided Mother with a service plan, which she signed. The plan set out tasks and goals for Mother to complete and reach in order to regain full custody of L.G. The service plan, which was modified and explained to Mother repeatedly by her caseworker in consideration of Mother's mental issues, provided Mother with information about service providers, i.e., the programs available to assist Mother in reaching the goals set by the Department. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. As previously explained, the evidence shows modifications were made to the service plan given Mother's mental issues, the excuse relied upon by Mother for not completing her plan. Nevertheless, regardless of the reason for her acts or omissions, they still exist and must be considered in determining the best interest of the child. *See D.W.*, 353 S.W.3d at 197.

It is undisputed that Mother completed the parenting course, the mandated psychosocial examination, and attended fourteen individual therapy sessions. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. However, according to the caseworker, despite completion of the parenting course and attendance at some therapy sessions, Mother has wholly failed to reach to goals of the service plan by demonstrating an ability to provide for the safety and welfare of L.G. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Despite her guardian's efforts, Mother continues

to reside, by her own choice, with a registered sex offender, uses drugs on a daily basis, and is unable to provide basic care for L.G. — unable to prepare a bottle or change a diaper. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Moreover, Mother failed to complete her service plan and was not in compliance at the time of trial. Specifically, Mother: (1) did not submit to drug testing as mandated; (2) is involved in drug and other criminal activities — daily marijuana use and multiple theft charges; (3) lacks stable housing; and (4) failed to begin or complete inpatient or outpatient drug treatment. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

### *Application of the Law to the Evidence*

The evidence establishes Mother committed acts or omissions under section 161.001(1). *See C.H.*, 89 S.W.3d at 28. Mother, by her own admission, uses strong narcotics when they were available and continues to use marijuana on a daily basis. Mother persists in living with a registered sex offender, stating she will never leave him, despite knowing this will preclude L.G. from returning to her home. Mother refuses to accept her guardian's assistance, surrounding herself with those who do not provide a proper support system, but are threatening to those who would attempt to help her.

Despite repeated parenting classes and a certificate showing completion, Mother is unable to provide L.G. with his most basic needs. She is unable to recognize when he needs to be changed, to change him, or prepare a bottle. Because she lacked the ability to care for L.G., even during short visitations, the trial court mandated that all visitations be supervised. Mother is often volatile and physical when she is angered, punching holes in the wall of her residence.

Moreover, Mother vacillates in her desire to have L.G. returned to her. L.G. is an infant — extremely vulnerable. He is currently in a foster home where his needs are met and he is loved and cared for. His foster parents have also expressed a desire to adopt him.

Recognizing that in conducting a best interest analysis, the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of Mother's parental rights would be in L.G.'s best interest. *See A.S.*, 2014 WL 5839256, at *2. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the child's best interest. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

We hold the evidence is legally and factually sufficient to allow the trial court to find termination of Mother's parental rights was in the best interest of L.G. Accordingly, we overrule Mother's issues and affirm the trial court's termination order.

Marialyn Barnard, Justice