

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00283-CV

———————————————————

IN THE INTEREST OF J.M. AND J.M., CHILDREN

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-104781-17

---

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

The trial court terminated the parental rights of L.M. (Father) to his two children, J.M. (Julie) and J.M. (Joshua).[1] In three issues on appeal, Father argues that the trial court erred by denying his motion for continuance of a trial that he did not attend and that the evidence is insufficient to support the predicate findings for termination. We hold that the trial court did not abuse its discretion by denying Father's continuance motion and that the evidence is sufficient to support the termination of his parental rights. We therefore affirm the trial court's judgment.

### Background

Father has a pattern of engaging in criminal acts, including violent offenses. In April 2017, he was arrested for assaulting[2] F.M. (Mother) by hitting her with a belt and Julie by hitting her with his hand or with a belt. At that time, the Department of Family and Protective Services (the Department) removed Julie and Joshua from their parents' legal custody and filed a petition seeking termination of the parents' parental rights to the children if reunification could not be achieved.[3] Upon their removal, Julie

---

[1]To protect the children's privacy, we use aliases for them and for related persons throughout this opinion. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2018); Tex. R. App. P. 9.8(b)(2).

[2]*See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2018).

[3]The Department submitted a lengthy affidavit to the trial court to explain the facts that required the children's removal. The trial court granted the Department temporary managing conservatorship of the children. Mother eventually voluntarily

was fifteen years old, and Joshua was three years old. Father later pleaded guilty for assaulting Mother and Julie, and a court sentenced him to 120 days' confinement in separate cases, with the sentences running concurrently.

In September 2017, during the Department's case concerning the children, Father made a terroristic threat[4] against a man while using or exhibiting a knife. He later pleaded guilty to committing that offense, and pursuant to a plea bargain, a court sentenced him to 125 days' confinement. Also in September 2017, Father fled from a police officer, thus committing the offense of evading arrest or detention.[5] He later pleaded guilty and received a 125-day sentence.

After Julie and Joshua's removal, Father visited them sporadically. From the time of their removal in April 2017 to the September 2018 trial, he saw them only nine times. During part of that time, he was confined because of the offenses described above. He last saw the children in May 2018. According to Vicki Garza, a conservatorship worker for the Department, Father behaved improperly in some of the visits. For example, in one of the visits,

> he became erratic in behavior with [Mother] . . . as well as with [Julie].
> He started cursing[,] . . . so he was asked to leave.
>
>    . . . .

---

relinquished her parental rights to the children, and the trial court terminated those rights. She has not appealed.

[4]*See id.* § 22.07(a) (West Supp. 2018).

[5]*See id.* § 38.04(a) (West 2016).

. . . [On a] second occasion . . . at the last visit . . . he, again, was expected to have a specific behavior with [Julie]. And he started showing her all these things that happened in jail and stuff. And I had asked him not to have that kind of conversation.

At some point, Father moved to New Mexico. He did not provide the Department with his address there, so the Department could not determine whether his home would provide a safe environment for the children. He failed to maintain consistent contact with Garza.

In June 2018, the children began living with their maternal aunt. The maternal aunt met their needs, including the special needs of Joshua, who is autistic. She wanted to adopt them, and Julie expressed that same desire if returning to her parents' care was not an option.[6] Garza testified that the children had stability in the maternal aunt's home. She expressed that she had no reason to believe that the maternal aunt would not be able to continue to meet the children's needs.

During the Department's case, the Department offered services to Father aimed at reunifying him with the children. He did not complete any of the services. He also did not provide monetary support for the children after their removal.

The children's attorney ad litem supported termination of Father's parental rights and believed termination was in the children's best interest. He told the trial court that he had spoken with Julie and that Julie "was okay with" permanently living

---

[6]Joshua was four years old at the time of trial, but because of his autism, he was not verbal.

4

with her aunt. He also stated that the maternal aunt was "in it for the long haul" and wanted to adopt the children.

At the end of a bench trial on the Department's termination petition, the trial court terminated Father's parental rights to Julie and to Joshua. Father brought this appeal.

**Motion for Continuance**

In his first issue, Father contends that the trial court erred by denying his motion for continuance of the trial. We review a trial court's denial of a motion for continuance for an abuse of discretion. *In re Z.C.*, 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009, pet. denied). We determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* We consider whether the trial court acted without reference to guiding rules or principles. *Id.*

On August 10, 2018, Father filed a motion for continuance of a trial set that day. In Father's motion, his counsel represented that until August 10, Father's "contact information and location had been unknown . . . for several months," that counsel had not had an adequate opportunity to consult with Father about the trial, and that Father was unable to attend the trial. Father asked the court for a continuance so that he could attend the trial.

On August 13, the trial court referred the case to an associate judge[7] and reset the trial date to September 6, 2018. The associate judge conducted the trial in September. Father's counsel appeared for trial, but Father did not. At the beginning of the trial, counsel told the trial court that he did not know why Father was not there and explained, "My office was in contact with [Father] as late as last week over the phone. He was aware of the court setting, and I don't have a reason for his lack of attendance today." Counsel orally asked the trial court for a continuance so that Father could "be here and be heard." The trial court denied the continuance.[8]

Faced with Father's unexplained and unjustified absence from a trial at which he had the opportunity to be "heard," we cannot conclude that the trial court acted arbitrarily or unreasonably by refusing to reset the trial for another date to give Father the same opportunity. *See In re D.W.*, 353 S.W.3d 188, 192–93 (Tex. App.—Texarkana 2011, pet. denied) (holding that a trial court did not abuse its discretion by denying a motion for continuance when a parent failed to attend her trial and explaining that if the parent "wished to retain rights to her child, it was necessary for her to take the actions necessary to exercise those rights"); *see also Shadoian v. Shook*, No. 03-18-00242-CV, 2018 WL 3625766, at *3 (Tex. App.—Austin July 31, 2018, no pet.) (mem. op.)

---

[7]*See* Tex. Fam. Code Ann. §§ 201.001–.018 (West 2014 & Supp. 2018).

[8]We will assume, without deciding, that Father's August 2018 written motion for continuance was sufficient to preserve his complaint about the associate judge's September 2018 ruling. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

("[T]he trial court was not required to grant a continuance simply because Shadoian could not be present and wished to be."); *Ray v. Ray*, 542 S.W.2d 209, 212 (Tex. Civ. App.—Tyler 1976, no writ) (holding that a trial court did not abuse its discretion by denying a motion for continuance when a party failed to appear for trial and the party's absence was unexcused). We hold that the trial court did not abuse its discretion by denying Father's motion for continuance, and we overrule his first issue. *See Z.C.*, 280 S.W.3d at 478.

## Factual Sufficiency

In his second and third issues, Father argues that the evidence is factually insufficient to support two of the trial court's findings supporting termination.[9] In a termination case, the State seeks to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West Supp. 2018); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). When the State seeks to sever the relationship between a parent and a child, it must first observe fundamentally fair procedures. *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings in favor of

---

[9]In the conclusion of his brief, Father raises legal insufficiency in addition to factual insufficiency. He did not brief any legal insufficiency issues in his argument, and his issue statements raise only factual insufficiency. To the extent that he implicitly argues legal insufficiency, our analysis below applies equally to that argument.

the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Clear and convincing evidence—a heightened evidentiary standard—must support termination decisions. *See* Tex. Fam. Code Ann. § 161.001(b) (West Supp. 2018), *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014).

For a trial court to terminate a parent-child relationship, the Department must prove that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child under section 161.001(b)(2). Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire

8

record, a factfinder could reasonably form a firm conviction or belief of the challenged grounds for termination. Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

### Section 161.001(b)(1) finding

In his second issue, Father contends that the evidence is factually insufficient to support the trial court's finding under section 161.001(b)(1)(N) that he constructively abandoned the children. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N). The trial court, however, made other section 161.001(b)(1) findings that Father does not challenge. The court found that Father had knowingly placed or knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being and that he had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. *See id.* § 161.001(b)(1)(D), (E).

As explained above, a trial court may terminate parental rights based on only one section 161.001(b)(1) finding plus a best-interest finding under section 161.001(b)(2). *See id.* § 161.001(b); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because Father does not challenge the trial court's other section 161.001(b)(1) findings, we need not address his argument that the evidence is factually insufficient to support the trial court's finding under section 161.001(b)(1)(N). *See* Tex. R. App. P. 47.1; *In re D.G.*, No. 02-17-00355-CV, 2018 WL 1414726, at *3 (Tex. App.—Fort Worth Mar. 22, 2018, no pet.) (mem. op.). We overrule Father's second issue.

**Best interest under section 161.001(b)(2)**

In his third issue, Father contends that the evidence is factually insufficient to prove that termination of his parental rights is in the children's best interest. We generally presume that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *In re A.B.*, 412 S.W.3d 588, 601 (Tex. App.—Fort Worth 2013) (en banc op. on reh'g), *aff'd*, 437 S.W.3d 498 (Tex. 2014).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Nonexclusive factors that the factfinder may use in determining the best interest of the child include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we consider, among other evidence, the *Holley* factors").

The evidence shows that Father has a history of committing crimes that include assaults against Mother and Julie. The trial court could have reasonably found that his violent criminal history and the periods of confinement that resulted from it reflected that he would not be able to meet the children's needs, that he would put the children in danger, that he had poor parenting abilities, that his home would not be a stable placement, and that his parental relationship with the children was not proper. *See Holley*, 544 S.W.2d at 371–72; *In re I.L.*, No. 02-18-00206-CV, 2018 WL 5668813, at *6 (Tex. App.—Fort Worth Nov. 1, 2018, no pet. h.) (mem. op.) (stating that a trial court could have rationally based best-interest findings on parents' criminal acts and their history of engaging in domestic violence); *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *7 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.) (stating that evidence of a parent's criminal history is relevant to evaluate the parent's parental abilities and explaining that "[c]riminal history and incarceration adversely affect the amount of contact between a parent and child and the parent's ability to provide financial and emotional support to the child").

The trial court also received evidence that during the Department's case, Father did not regularly visit the children, did not behave appropriately during some of his visits with them, did not financially support them, and did not complete services that could have led to his reunification with them. From this evidence, the trial court could have reasonably found that termination was in the children's best interest. *See I.L.*,

11

2018 WL 5668813, at *6 (stating that parents' failure to complete services and their failure to consistently visit their child supported the trial court's best-interest finding).

Next, the trial court learned that during the Department's case, Father moved away from the children to New Mexico and that he did not maintain consistent contact with the Department, and the trial court could have rationally considered these facts in forming its best-interest finding. *See In re V.T.E.*, No. 10-17-00310-CV, 2018 WL 1097256, at *4 (Tex. App.—Waco Feb. 28, 2018, no pet.) (mem. op.).

Finally, the evidence showed that the children's maternal aunt was meeting their needs, that she desired to adopt them, and that Julie had agreed to stay there. The trial court could have reasonably relied on this evidence to determine that the children's needs, both now and in the future, could be best met through terminating Father's parental rights instead of considering any alternatives to termination. *See Holley*, 544 S.W.2d at 372; *In re G.H.*, No. 02-17-00193-CV, 2017 WL 4683925, at *9 (Tex. App.—Fort Worth Oct. 19, 2017, no pet.) (mem. op.) (considering in a best-interest review that foster parents were meeting a child's needs and wanted to adopt him).

For these reasons, we hold that the evidence is factually sufficient to show that termination of Father's parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *C.H.*, 89 S.W.3d at 28; *Holley*, 544 S.W.2d at 371–72. We overrule Father's third issue.

## Conclusion

Having overruled all of Father's issues, we affirm the trial court's judgment terminating his parental rights to Julie and Joshua.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: December 6, 2018