**AFFIRM; and Opinion Filed July 1, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00044-CV

### IN THE INTEREST OF C.P., A CHILD

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-30012-2018**

# MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

M.P. appeals the trial court's order terminating her parental rights to the minor child, C.P., after a bench trial. In two issues, M.P. argues the trial court abused its discretion by not granting her motion for new trial because she did not receive actual or constructive notice of the trial date, in violation of her right to be present at trial under the due process clause of the Fourteenth Amendment to the United States Constitution.[1]

We conclude M.P. failed to preserve her complaint on appeal that she did not receive constructive notice of the trial date. However, even if preserved for appellate review, we conclude the evidence shows M.P. had both actual notice and constructive notice of the trial date. We affirm the trial court's judgment.

---

[1] In her first issue, M.P. contends the trial court's order terminating her parental rights "is void, because [she] did not receive notice, actual or constructive, of the final trial setting." In her second issue, M.P. contends the trial court abused its discretion by "not granting her motion for new trial, because [she] did not receive notice, actual or constructive, of the final trial setting."

## BACKGROUND

M.P. does not challenge the sufficiency of the evidence to support the trial court's termination of her parental rights. Therefore, we recount the complicated history of this case only as necessary to resolve the issues before us, namely, whether M.P. had notice of the trial date, and whether the trial court abused its discretion by allowing M.P.'s motion for new trial to be denied by operation of law.

C.P. is the biological child of M.P. and B.M.[2] On January 16, 2018, the Texas Department of Family and Protective Services (the Department) filed an original petition for protection of the child, for conservatorship, and for termination in a suit affecting the parent-child relationship (SAPCR). M.P. was promptly served with notice and citation of the SAPCR. The trial court appointed attorneys ad litem for C.P. and M.P. After retaining Malcolm Miranda as her attorney, M.P. filed an answer to the suit on January 25, 2018, and on January 26, 2018, M.P. filed an original counter-petition in the suit.

On February 26, 2018, Miranda filed a motion to withdraw as M.P.'s counsel. Miranda's motion for withdrawal stated that he was "unable to communicate effectively" with M.P and that M.P. consented to his motion for withdrawal. The trial court granted Miranda's motion, and later appointed Greg Gibbs as M.P.'s attorney.

### Permanency Hearing Orders Provided the Trial Date

The trial court held numerous hearings during the pendency of the case. The record reflects that M.P. attended permanency hearings on June 7, 2018 and September 24, 2018, and she was represented by counsel at both hearings.

---

[2] B.M. voluntarily relinquished his parental rights to C.P., and he is not relevant to the issues on appeal. Therefore, except as relevant to the issues before us, we do not further discuss B.M. in this opinion.

At the June 7 permanency hearing, M.P. was represented by Gibbs. Alyson Dietrich appeared as attorney for the Department. Melissa Cason appeared as attorney ad litem for C.P. At the hearing, M.P. was called to testify. Claiming a Fifth Amendment privilege against self-incrimination under the United States Constitution, M.P. refused to answer the following questions by Dietrich:

- "[D]o you go by any other names? Is [M.P.] the only name you use?"

- "How long have you been incarcerated?"

- "[P]rior to being incarcerated did you complete any services that the Department asked you to do?"

- "You have no motions on file right now disputing the jurisdiction in this court, correct? In this court you have no motions on file disputing the jurisdiction, correct?"

- "You were present and participated in the 14 Day Hearing in this case, correct?"

- "Are you participating in any programs offered by the jail?"

M.P. initially invoked the Fifth Amendment in response to Dietrich's questions. Subsequently, M.P. refused to verbally respond to Dietrich's questions at all. M.P. did not follow the trial court's instruction to verbally invoke the Fifth Amendment for each question she was declining to answer. In a final act of defiance, M.P. refused to comply with the trial court's order that she verbally respond to the trial court's questions.[3] The following exchange occurred between the trial court and M.P.:

> The Court: We're going to go through this again. You are still going to have to respond to the question. You can plead the Fifth if you like, but you have to respond. Are we clear? I need a yes or a no on that. At this point, I'm ordering you to answer my question. Do you understand, yes or no? Okay. If you're not going to cooperate, do I need to just have them take you back into the holdover cell?

---

[3] Prior to the trial court's instruction and order that M.P. verbally respond to each question, Gibbs informed M.P. that she needed to verbally answer each question. Gibbs told M.P., "You have to invoke the Fifth at each and every question[.]"

[M.P.]: (Witness nods head.)

M.P. was removed from the courtroom and the proceedings continued with Gibbs representing M.P. Before announcing a recess, the trial court addressed the admonishments in the permanency hearing order.

> Ms. Dietrich: Did you want to bring [M.P.] back out to admonish her or just – admonishments are also in the order but she did not sign it.
>
> The Court: I believe at this point with her lack of cooperation and ability to follow the Court orders that she's waived her right to be out here. The admonishments are in the court order. I'm going to rely on those at this point.
>
> Ms. Dietrich: And I'll provide Mr. Gibbs a copy to give to her if she wants to take it back with her.
>
> The Court: I have signed off on the order. I will note for the record that it is not agreed to as to the mother or the father and their attorneys have not signed off on it either. I have signed off on the order, though.

At the conclusion of the hearing, the trial court signed a permanency hearing order that set the case for trial on December 3, 2018 at 9 a.m. A copy of the June 7, 2018 permanency hearing order was provided to M.P.

At a hearing on August 3, 2018, M.P. told the trial court she did not want Gibbs to represent her, and that she wished to proceed pro se. On September 20, 2018, the trial court appointed Michael Curran to represent M.P.

M.P. attended the September 24, 2018 permanency hearing, and she was represented by Curran at the hearing. Dietrich appeared as attorney for the Department. Cason appeared as attorney ad litem for C.P. Brent Debnam and Michael Debnam appeared as attorneys for intervenor S.D., M.P.'s mother.[4] At the September 24 permanency hearing, the trial court and the

---

[4] At the commencement of the September 24, 2018 permanency hearing, Brent Debnam informed the trial court that he and Michael Debnam (collectively, the Debnam attorneys) were "unable to effectively communicate with [S.D.]" and they requested permission to withdraw as counsel for S.D. The trial court declined to grant the Debnam attorneys' request to withdraw as S.D.'s counsel. Also at the commencement of the September 24 permanency hearing, B.M. moved to strike S.D.'s intervention. At the conclusion of the September 24 permanency hearing, the trial court granted B.M.'s motion to strike intervention and the trial court struck S.D.'s petition in intervention.

parties confirmed the trial date was December 3, 2018 while M.P. and her counsel were present in the courtroom. At the conclusion of the hearing, the trial court signed the permanency hearing order in the presence of the parties. The September 24, 2018 permanency hearing order stated that the case was set for trial on December 3, 2018 at 9 a.m. A copy of the September 24 permanency hearing order was provided to M.P.

**Curran's Motions for Withdrawal of Counsel Provided the Trial Date**

M.P. was incarcerated from approximately April 10 to October 31, 2018. Record evidence shows that M.P. was charged with and pled guilty to the felony offenses of abandoning or endangering a child, attempted kidnapping, forgery of a financial instrument, and attempted evading arrest or detention with a vehicle.

On October 22, 2018, Curran filed a motion for withdrawal of counsel at M.P.'s request. Curran's motion provided the date of the trial, stating, "Trial Before the Court is set on 12/3/18 @ 9:00 a.m." On the same day, Curran filed an amended motion for withdrawal of counsel, which also stated the date of the trial was December 3, 2018 at 9 a.m. Curran's motion for withdrawal and amended motion for withdrawal declared that copies of the motions would be faxed to M.P. at the Collin County jail. On October 23, 2018, the trial court set the hearing on Curran's motion for withdrawal for November 16, 2018 at 9 a.m.

The docket sheet reflects that M.P. filed a response to Curran's motion for withdrawal of counsel on October 29, 2018. On the same day, the trial court signed an "Amended Order Setting Hearing Date," re-scheduling the hearing on Curran's motion for withdrawal for November 1, 2018 at 4:30 p.m. (Amended Order). The Amended Order, however, erroneously stated, "the hearing on the Final Trial is set for 4:30 p.m. on the 1st day of November, 2018." The trial court's docket sheet correctly reflected that the November 1, 2018 hearing was a hearing on Curran's "Motion for Withdrawal of Counsel (4:30 PM)." On the morning of October 30, 2018, Curran

–5–

notified M.P. of the November 1 hearing on his motion for withdrawal by facsimile to the Collin County jail. The fax coversheet stated,

> [M.P.], attached is the Motion to Withdraw that was filed last week. There is a signature line on page 3 for you to sign and bring with you to court **on Thursday, 11/1/18 @ 4:30 p.m., when the Motion to Withdraw hearing will be held**.

(Emphasis added.) Curran received a confirmation receipt showing the jail received Curran's fax. Curran filed a second amended motion for withdrawal of counsel on November 1, 2018. Curran's second amended motion for withdrawal reiterated that the date of the trial was December 3, 2018 at 9 a.m.

Evidence attached to Curran's second amended motion for withdrawal—including text messages by and between M.P., M.P.'s mother, and Curran—demonstrated that M.P. wanted Curran removed as her attorney, and that M.P. knew the November 1, 2018 hearing was a hearing on Curran's motion for withdrawal of counsel and was not the date of the trial. Beginning early on the morning of November 1, M.P. and Curran exchanged text messages regarding the 4:30 p.m. hearing that day on Curran's motion for withdrawal. M.P.'s text messages to Curran stated, "I consent to you withdrawing and substituting counsel with Hannah Stroud." M.P. also accused Lynn Randel, C.P.'s child protective services (CPS) caseworker, of engaging in "abusive actions," and M.P. demanded the assignment of a new CPS caseworker. Curran replied, "Please call [M]s. Randall [sic] now. I told your mom last night to call first thing this morning. We can also take care of all these issues at 4:30 this afternoon. Please be there." Additionally, on the evening of October 31, 2018, Curran "received and traded a number of text messages with [M.P.'s] mother . . . clearly stat[ing] that there is a hearing [the following day, November 1] at 4:30 and that [M.P.] needs to be present."

As scheduled under the Amended Order, the trial court held the hearing on Curran's motion for withdrawal of counsel on November 1, 2018. At the hearing, the trial court confirmed that

"trial is set for December 3." Although M.P. had notice of the hearing on Curran's motion for withdrawal, she elected to not attend.

At the hearing on Curran's motion to withdraw, Curran confirmed that he could not effectively represent M.P. because of a "complete breakdown in communication." Curran told the trial court,

> [M.P.] certainly has a present ability to understand the charges or the nature of this lawsuit, but there's absolutely no way that [I can] effectively communicate, and I don't believe that there's anything that I can do that's going to allow her to feel that I'm providing any sort of effective assistance of counsel.
>
> In particular, she feels that I should have Ms. Randel summarily removed as the [CPS] caseworker in this case. I haven't been able to do that.
>
> * * * *
>
> As an officer of the Court, [I] don't ever recall in thirty-five years of practicing law that I've ever been in a situation such as this.

Noting that M.P. previously requested the removal of her court-appointed attorney Greg Gibbs and that M.P. had "gone through . . . several attorneys at this point," the trial court granted Curran's motion for withdrawal. The trial court's order granting Curran's motion was filed on November 1, 2018.[5] The order stated, "Trial Before the Court is set on 12/3/18 @ 9:00 a.m." The order reflected the trial court's determination that a copy of Curran's motion for withdrawal of counsel "was delivered to [M.P.]" and that M.P. consented to Curran's motion.

**Solomon's Motion for Withdrawal of Counsel Provided the Trial Date**

On November 12, 2018, the trial court appointed Amanda Solomon as attorney ad litem to represent M.P. On November 19, 2018, M.P. emailed Solomon at 1:19 p.m. and at 8:42 p.m., demanding that Solomon withdraw as her counsel. Solomon filed a motion for withdrawal of counsel on November 20, 2018. The first page of Solomon's motion for withdrawal stated, "This

---

[5] The trial court's order granting Curran's motion is file-stamped "11/1/2018 4:41 PM." However, the typewritten date next to the trial court's signature indicates the order was signed on "11/6/2018."

–7–

matter is set for a trial before the Court on December 3, 2018 at 9:00 a.m." Solomon's motion averred she was "unable to effectively communicate with [M.P.]."

The hearing on Solomon's motion for withdrawal was set for November 30, 2018 at 9 a.m. Solomon's motion for withdrawal certified that on November 20, 2018, copies of the motion and the notice of the hearing were delivered to M.P. "electronically via email" as well as by mail to M.P.'s last known address. A November 22, 2018 email from M.P. to Solomon confirmed that M.P. was apprised of the November 30 hearing, stating, "It appears you are still purporting to be my attorney until 11/30/18." In the same email, M.P. threatened to file a grievance against Solomon, fulminating, "If you don't want to do your job and file motions or do anything at all like you indicated in your prior email to me, I will be submitting a bar complaint." M.P. demanded "an accounting of all hours you claim to have worked and a description of what you have done." Record evidence shows M.P. also threatened to file grievances against Cason, and M.P. threatened to "prosecut[e]" Cason.

M.P. elected to not attend the November 30, 2018 hearing on Solomon's motion to withdraw. At the hearing, Solomon underscored that she was unable to effectively communicate with M.P. Solomon verified that M.P. had notice of the date and the time of the hearing on Solomon's motion for withdrawal. Solomon told the trial court,

> [M.P.] gave me a confidential address to mail all things to. I mailed [the notice of hearing on the motion to withdraw] to that address. I E-mailed it to her in a PDF form [and] in a Word form [and] actually cut and pasted it into the E-mail, so she got it several ways.

Evidence admitted at the hearing included M.P.'s November 19 and November 22, 2018 emails, which verified that M.P. was in contact with Solomon and receiving Solomon's emails.

At the November 30 hearing on Solomon's motion for withdrawal, the trial court confirmed that the trial was set for Monday, December 3, 2018. Solomon assured the trial court that M.P. was "aware that we are set for trial on Monday[, December 3, 2018]." Testimony at the November

30 hearing provided additional evidence that M.P. knew the date of her trial was December 3, 2018 and that M.P. planned and intended to absent herself from the trial. Randel testified that she listened to "[p]robably no less than a hundred" recordings of jail telephone calls between M.P. and M.P.'s mother. Randel testified that the recorded jail telephone calls made it "clear" that "[M.P.] was aware that the trial" was set for December 3, 2018. In the recorded calls, M.P. described "her plans [for] the trial" and how she intended to "go forward." M.P. stated that she "does not intend to attend [the trial]. Her plan is to relinquish her rights, she believes she already has, . . . and that her dad is to hire an attorney to fight for [C.P.] back and then give [C.P.] to her." M.P. planned to "leave the area" after "get[ting C.P.]." According to Randel, the recorded telephone calls indicated "this is a plan that [M.P.] worked on with both her parents."

Randel also testified that she communicated with M.P. and M.P.'s mother "quite a bit throughout this case." Based on her personal conversations with M.P. and M.P.'s mother, it was clear to Randel that M.P. was aware the case was set for trial on December 3, 2018. According to Randel, the email address M.P. used to email Solomon was the "same E-mail [address M.P.] used since the beginning of the case," and Randel received and replied to the same email address to correspond with M.P.

Dietrich concurred with Randel's testimony that it was M.P.'s plan to not appear at trial. Dietrich apprised the trial court,

> Based on the jail calls and communications that Ms. Randel has in this case, I do believe that it is a strategy of [M.P.] to not appear at trial and to perhaps pursue an appeal after the final order is signed in this case with whatever disposition that the Court makes.
>
> * * * *
>
> [M.P.] is aware of the trial and can appear before the Court for her trial if she wishes to do so. And just for the record, she has not appeared here today after being notified of this hearing.

At the trial court's request, Solomon agreed to communicate to M.P. that: the trial court held a hearing on Solomon's motion for withdrawal of counsel on Noveber 30; the trial court was taking the motion for withdrawal under advisement and would address it at trial on Monday, December 3; and the trial court had ordered Solomon to remain on the case as shadow counsel.

**M.P. Knew Her Parental Rights Could Be Terminated**

M.P. was repeatedly informed that her parental rights were at stake and could be terminated in this case. At the June 7, 2018 permanency hearing, M.P. was in the courtroom when the Department told the trial court that its "permanency goal in this case" was termination of M.P.'s parental rights.

At the August 3, 2018 hearing on Gibbs' withdrawal as M.P.'s counsel, M.P. told the trial court she did not want Gibbs to represent her, and she wished to proceed pro se in this case. In response, Dietrich stated that she "want[ed] it to be clear on the record that the Department's goal in this case is termination, which would make [M.P.] eligible for a court-appointed attorney under the Family Code and that [M.P.] understands that and is still waiving that right." The trial court admonished M.P. that her parental and custodial rights were subject to termination, stating:

> And, [M.P.], you heard what Ms. Dietrich just indicated. Knowing [the] Department is requesting termination of your parental rights, you understand you have the right to have an attorney appointed. You still want to represent yourself?

M.P. confirmed that she understood the Department was requesting termination of her parental rights, and she wished to represent herself.[6]

---

[6] At the August 3, 2018 hearing, M.P. complained that she "didn't receive notice of the June 7th hearing or any other hearings that have taken place." The record, however, reflects that M.P. attended the June 7, 2018 permanency hearing, as well as other hearings, including but not limited to the September 24, 2018 permanency hearing, status hearings, a "14 Day Hearing" that took place over the course of January 29, February 2, and February 6, 2018 regarding the removal of C.P. from M.P.'s home, and the hearing on her motion for new trial.

## The Trial

A three-day bench trial was conducted December 3 through December 5, 2018. M.P. did not appear at trial. Solomon appeared as attorney of record for M.P. Dietrich appeared as the Department's attorney. Cason appeared as attorney ad litem for C.P. At the commencement of trial, the trial court denied Solomon's request to withdraw as M.P.'s counsel. The trial court confirmed on the record that M.P. had not requested to represent herself, and M.P. had not represented that she wished to retain her own attorney. The trial court stated,

> I know we had the hearing on Friday. I believe you're now [M.P.'s] fourth or fifth attorney at this time, but I don't believe there's been willingness and she's not here today to indicate whether or not she plans to represent herself or whether she plans to hire an attorney, so at this point, I'm going to order that you remain on the case.

The trial court also confirmed that M.P. had knowledge of the December 3, 2018 trial date:

> [I] need to make sure and verify is it everyone's understanding that [M.P.] had knowledge of the trial setting date set for today or will there be testimony or evidence elicited confirming such?

Dietrich verified,

> I believe that [M.P.] did have notice of the hearing today and I believe that there will be evidence presented throughout the trial, including the original service citation, the fact that she was present for the hearing in September [when we discussed] the trial deadline, as well as other documents, including conversations she had with her own mother about the upcoming trial. So I think that we'll establish that [M.P.] was aware that trial was today.

In opening remarks, Solomon stated, "I have been unable to effectively communicate with [M.P.]. The evidence presented at the Motion to Withdraw hearing on November 30th showed that I'm unable to effectively communicate with [M.P.], as well as the evidence presented in Respondent Mother's Exhibits 1, 2 and 3 this morning."[7] Solomon was present for the duration of the three-day trial. She did not offer evidence, call witnesses, or cross-examine witnesses.

---

[7] Exhibits 1, 2, and 3 consisted of the November 19, 2018 and November 22, 2018 emails from M.P. to Solomon, in which M.P. demanded that Solomon withdraw as her counsel, M.P. threatened to file a grievance against Solomon, and M.P. ordered Solomon to produce an accounting of her legal services performed on the case.

At the conclusion of trial, Solomon requested to withdraw as counsel for any appeal. After requesting that Solomon "stay on the cause until the final order has been signed," the trial court instructed Solomon to provide a copy of the signed final order to M.P., at which time the court would consider Solomon's motion for withdrawal of counsel:

> So that I know that what occurred in the trial has at least - - you've attempted to convey it to her with whatever means you have attempted to communicate with her, and then I'd also like to make sure that you can represent to the Court that the final order was sent to - - to respondent mother, and then at that time, if you would like to present a request for withdrawal, then I will consider it at that time.

The trial court found that:

- Based upon specified grounds in Texas Family Code 161.001, it was in the best interest of the child, C.P., to terminate M.P.'s parental rights.

- The Department went "above and beyond in this case and made significant efforts to reunify the child with her mother . . . . and doing really whatever they could to try to get the mother to get in compliance with the service plan and with what needed to be done so that she could effectively and safely parent her child."

- C.P. would remain in her current placement.

The trial court signed the amended final order on December 18, 2018. Finding "by clear and convincing evidence that termination of the parent-child relationship between [M.P. and C.P.] is in the best interest of the child," the trial court ordered termination of the parent-child relationship between M.P. and C.P. The trial court appointed the Department as permanent managing conservator of C.P. Solomon emailed a copy of the signed final order to M.P. on the same day.

**MOTION FOR NEW TRIAL**

On January 17, 2019, M.P., represented by new counsel, filed a motion for new trial, complaining that M.P. "was not given actual notice of the trial date due to ineffective [assistance] of counsel." Likewise, at the hearing on her motion for new trial, M.P.'s counsel argued, "[t]he

–12–

issue in this case is whether or not my client got actual notice of the final trial when it was heard."[8]

M.P. did not raise the issue of constructive notice in the trial court.

For the first time on appeal, in addition to arguing that she did not receive actual notice of the trial date, M.P. complains that her constitutional due process rights were violated because she did not receive constructive notice of the trial date. M.P. maintains the trial court thereby abused its discretion by not granting her motion for new trial.[9] M.P.'s motion for new trial alleged:

- Curran's October 22, 2018 motion for withdrawal of counsel provided the December 3, 2018 trial date and time, but M.P. was "never provided a copy of said Motion for Withdrawal of Counsel."

- On October 23, 2018, the trial court set the hearing on Curran's motion for withdrawal of counsel for November 16, 2018 at 9 a.m. On October 29, 2018, the trial court signed an "Amended Order Setting Hearing Date, ordering the 'Final Trial' set for November 1, 2018 at 4:30 p.m., providing only two (2) days notice of set trial date."

- On November 1, 2018, Curran filed a second amended motion for withdrawal of counsel, "attaching text messages which had been exchanged between [M.P.] and Mr. Curran, wherein Mr. Curran stated the hearing on his Motion to Withdrawal [sic] was to be heard that afternoon, at 4:30 p.m."

- On November 6, 2018, the trial court signed an order granting Curran's motion for withdrawal of counsel, but M.P. "never received copies of this Order or any Notices."

- Solomon's November 20, 2018 motion for withdrawal of counsel "did not list any settings or deadlines including the Notice for Final Trial."

- On November 20, 2018, "the Notice of Hearing for [Solomon's] Motion for Withdrawal was set for hearing on November 30, 2018 at 9:00 a.m.. . . . [M.P.] did not receive a copy of this Notice."

- M.P. corresponded with Solomon "for the first time" on December 5 and December 6, 2018.

---

[8] While M.P.'s motion for new trial did not raise a constitutional due process challenge, at the hearing on the motion for new trial, M.P.'s counsel argued, "[M.P.] was not afforded her due process to be able to be present at [the] final trial[.]"

[9] For the first time on appeal, M.P. also contends the trial court's judgment is "void" because she did not receive actual notice or constructive notice of the trial date. Because we conclude M.P. had actual notice and constructive notice of the trial date, we need not address whether M.P. waived that issue by not raising it in the trial court.

–13–

- M.P. informed Solomon by email on December 6, 2018 that she "had no knowledge that [Solomon] was the attorney on the case and that she was unsure of who [Solomon] was and why she purportedly represented [M.P.]."

- M.P. was "represented by court appointed attorney of record, Amanda Solomon" when the trial court signed the amended final order on December 18, 2018.

- Solomon emailed M.P. the amended final order on December 18, 2018.

M.P. attached an affidavit to her motion for new trial averring that the statements in her motion were true and correct.

The record, however, belies many of M.P.'s representations in her motion for new trial and at the hearing on her motion. In her motion for new trial and at the hearing on her motion for new trial, M.P. claimed she "was unsure of who [Solomon] was" and she did not know Solomon was her attorney. M.P. prevaricated,

> On December 5th and December 6th, [M.P.] and Amanda Solomon corresponded for the first time after the three-day trial had taken place. This is the first time [M.P.] had spoken to her trial counsel when she didn't know trial was taking place on December 3rd.

Contrary to M.P.'s claim that, as of December 6, 2018, she did not know Solomon was her attorney, the evidence shows that M.P. emailed Solomon twice on November 19, 2018 and again on November 22, 2018. In her November 19 and November 22 emails to Solomon, M.P.: (1) asked Solomon to withdraw as her attorney, (2) recognized that Solomon was "still purporting to be [her] attorney until 11/20/18," (3) threatened to submit a bar complaint against Solomon, and (4) demanded "an accounting of all hours you claim to have worked and a description of what you have done." All of M.P.'s emails were from the same email address M.P. used throughout the case, and two of the emails were signed with M.P.'s name.

M.P.'s motion for new trial also falsely claimed that Solomon's November 20, 2018 motion for withdrawal of counsel "did not list any settings or deadlines including the Notice for Final

Trial." To the contrary, the first page of Solomon's motion for withdrawal stated, "This matter is set for a trial before the Court on December 3, 2018 at 9:00 a.m."

The evidence also confutes M.P.'s claims that she did not receive notice from Curran regarding the December 3, 2018 trial date, and that she believed the November 1, 2018 hearing was the date of the trial. Curran filed three motions for withdrawal of counsel, all of which stated the trial date was December 3, 2018. Text messages exchanged between M.P. and Curran and Curran's statements to the trial court reflect that M.P. was notified on multiple occasions that the trial was set for December 3, 2018, and that M.P. knew the November 1, 2018 hearing was a hearing on Curran's motion for withdrawal as counsel.

### The Hearing on M.P.'s Motion for New Trial

The trial court conducted a hearing on M.P.'s motion for new trial on January 7, 2019. Testimony and evidence presented at the hearing establish that M.P. knew that December 3, 2018 was the trial date. At the hearing, Randel testified that she attended the trial on December 3, 4, and 5, 2018. During the trial, Randel received a text message from M.P., requesting a visit with C.P. Randel replied to M.P. "that we were actually in her trial for the termination, and that depending upon the outcome of the trial, that I would get back with her as far as if there would be a visit." Despite being informed the trial was in progress, M.P. did not appear at trial after receiving Randel's text message.

Randel testified that recorded jail telephone calls between M.P. and M.P.'s mother were introduced into evidence at trial. The recorded calls confirmed that M.P. knew December 3, 2018 was the trial date. According to Randel, "during the course of those many [recorded] conversations," M.P. discussed "specific strategies about whether or not to appear for trial." M.P.'s "strategy for the outcome of this case" was for M.P.'s "dad to gain custody of the child and then for her to leave the state and for them to give [C.P.] to her."

–15–

Michelle Stewart, M.P.'s probation officer, testified that she met with M.P. on November 26, 2018 and "specifically" asked M.P. whether she was going to attend the trial on December 3. M.P. told Stewart that "she did not think that there would be a trial. She thought it was just going to go away, so she didn't have an intention of attending any other court session."

M.P. testified that she did not "recall having any knowledge of the trial setting at any point for being December 3, 2018." M.P. further claimed that:

- After November 1, 2018, she did not "receive any actual notice of the trial being reset to December 3, 2018."

- She did not recall any discussion of the December 3, 2018 trial date at the September 24, 2018 permanency hearing which she attended.

- She "[did not] think [she] ever read a permanency hearing order."

- She did not recall any discussion of the December 3, 2018 trial date at the August 3, 2018 hearing on Gibbs' motion for withdrawal as counsel which she attended.

- She did not "review any motions or orders for withdrawal of counsel for . . . Mike Curran," which provided the trial date was December 3, 2018.

- She did not review the September 24, 2018 permanency hearing order which stated the trial was set for December 3, 2018.

- She did not receive any correspondence or copies of notices regarding trial during the time she was incarcerated other than the Amended Order Setting Hearing Date which stated the final trial was set for November 1, 2018.

- She did not send the November 19 and November 22, 2018 emails to Solomon which: demanded that Solomon withdrawal as her counsel, threatened to file a bar complaint against Solomon, and ordered Solomon to produce "an accounting of all hours [Solomon] claim[ed] to have worked and a description of what [Solomon has] done."

- She did not have any conversations with CPS workers about the December 3, 2018 trial, and "no [CPS] caseworker ever mentioned [that] there was a trial on December 3."

- She communicated with a CPS caseworker on December 3, 4, or 5, but the caseworker did not tell her that "trial was in progress."

- She was in Dallas at a friend's apartment during the trial, and "by December 6th [she was] aware that the trial had already happened."

- She did not plead guilty to the offense of forgery, and she "didn't plead guilty to anything."

- The signature on the plea agreements, which identified M.P. as the defendant, was not her signature.

The trial court did not rule on M.P.'s motion for new trial. M.P.'s motion for new trial was denied by operation of law. *See* TEX. R. CIV. P. 329b(c).

## DISCUSSION

### Notice of Trial

As a matter of due process under the Fourteenth Amendment to the United States Constitution, a party who has entered an appearance in a contested case is entitled to notice of the trial setting. *LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex. 1989) (per curiam) (citing *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988)); *see also Broadway v. Boldes*, No. 05-00-00824-CV, 2001 WL 1289466, at *2 (Tex. App.—Dallas Oct. 25, 2001, no pet.) (op. nunc pro tunc) (not designated for publication). Under Rule 245 of the Texas Rules of Civil Procedure, a party who has filed an answer in a lawsuit is entitled to no less than forty-five days' notice of the trial setting. TEX. R. CIV. P. 245. Notice may be either actual or constructive, as long as it is reasonably calculated under the circumstances to apprise the party of the pendency of the action and to provide an opportunity to present objections. *Peralta*, 485 U.S. at 84; *see also Delgado v. Tex. Workers' Comp. Ins. Fund*, No. 03-03-00621-CV, 2006 WL 663903, at * 7 (Tex. App.—Austin Mar. 17, 2006, no pet.) (mem. op.).

In her first issue, M.P. contends "the amended final order purporting to terminate [M.P.'s] parental rights is void, because [she] did not receive notice, actual or constructive, of the final trial setting." In her second issue, M.P. contends the trial court abused its discretion by not granting M.P.'s motion for new trial, because M.P. "did not receive notice, actual or constructive, of the

–17–

final trial setting." Because it is dispositive of both issues, we begin by addressing the question of whether the trial court abused its discretion by not granting M.P.'s motion for new trial because M.P. did not receive actual notice or constructive notice of the trial date.[10]

**Standard of Review**

The disposition of a motion for new trial is within the trial court's sound discretion. *Stein v. Meachum*, 748 S.W.2d 516, 517 (Tex. App.—Dallas 1988, no writ); *see also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992). We review the denial of a motion for new trial for an abuse of discretion, whether the denial is by court order or by operation of law. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *see also Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 81 (Tex. App.—El Paso 2014, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules of principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *see also In re P.C.S.*, 320 S.W.3d 525, 530 (Tex. App.—Dallas 2010, pet. denied).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *In re D.P.B.*, No. 05-17-00185-CV, 2018 WL 3014628, at *1 (Tex. App.—Dallas June 15, 2018, no pet.) (mem. op.). The fact a trial court decided a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 242.

When the parties present controverting evidence at a hearing on a motion for new trial, it is the trial court's duty as the factfinder to ascertain the true facts. *See Stein*, 748 S.W.2d at 517. As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight

---

[10] Because we conclude M.P. had actual notice and constructive notice of the trial date, we do not address whether M.P. waived her argument that the judgment is void by not raising that issue in the trial court.

to be given to their testimony, and it is the trial court's province to resolve any discrepancies in their testimony. *See Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.) ("In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflict or inconsistencies in the testimony."). The trial court may choose to believe all, none, or part of a witness' testimony. *Stein*, 748 S.W.2d at 517; *see also In re M.G.M.*, 163 S.W.3d 191, 202 (Tex. App.—Beaumont 2005, no pet.) ("It was for the trial court alone to determine the credibility of the witnesses, and the trial court could have disregarded [petitioner's] denials in their entirety."). An appellate court is not permitted to substitute its judgment for that of the trial court and is not allowed to re-weigh the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

### M.P. Had Actual Notice of the Trial Date

Most frequently, a motion for new trial in the context of a termination proceeding is filed when a default judgment is granted because a party did not appear at trial. That is not the case here. The trial court conducted a three-day trial, at which M.P. was represented by counsel. The trial court heard testimony and admitted evidence into the record.

At the hearing on M.P.'s motion for new trial, the trial court was faced with directly contradictory contentions and testimony concerning the reason M.P. did not appear for trial on December 3, 2018. It was squarely within the trial court's authority to assess which testimony and evidence was credible. Many of M.P. statements, in her motion for new trial and at the hearing on her motion, are belied by record evidence, including, but not limited to:

- M.P.'s contention that she did not receive any correspondence or copies of notices regarding the trial date while she was incarcerated, other than the Amended Order Setting Hearing Date.

- M.P.'s contention she never discussed the December 3, 2018 trial date with any CPS caseworker, and no CPS caseworker "ever mentioned [that] there was a trial on December 3."

–19–

- M.P.'s contention that she communicated with a CPS caseworker on December 3, 4, or 5, but the caseworker did not tell her that "trial was in progress."

- M.P.'s contention that on December 5, 2018, she did not know Solomon was her attorney on the case and "she was unsure who [Solomon] was."

- M.P.'s contention that on December 5 and December 6, 2018, she and Solomon "corresponded for the first time after the three-day trial had taken place."

- M.P.'s contention that, although they were sent from M.P.'s email address, she did not send the November 19 and November 22, 2018 emails to Solomon demanding that Solomon withdraw as her attorney, threatening to file a grievance against Solomon, and ordering Solomon to provide an accounting of the legal services Solomon claimed to have provided to M.P.

- M.P.'s contention that Solomon's November 20, 2018 motion for withdrawal of counsel "did not list any settings or deadlines including the Notice for Final Trial."

- M.P.'s contention that she did not receive notice from Curran regarding the December 3, 2018 trial date.

- M.P.'s contention that she did not know—and Curran did not communicate to M.P.—that the hearing on his motion for withdrawal of counsel was set for November 1, 2018.

The record supports a reasonable inference that the trial court evaluated the evidence and the conflicting testimony and found M.P.'s testimony not credible. "We will not second guess the trial court's discretion to determine" the credibility of a witness or resolve questions of fact. *See Allen v. Allen*, No. 13-09-704-CV, 2011 WL 861582, at *3 (Tex. App.—Corpus Christi Mar. 10, 2011, no pet.) (mem. op.).

Based on this record, the trial court also could have found M.P.'s claim that she did not have notice of the trial date not credible, given evidence of her deceitful and duplicitous actions throughout the case, including evidence that:

- M.P. made "numerous calls" and filed "paperwork" with CPS falsely claiming that C.P. "had been listed on the data base for missing and exploited children."

–20–

- M.P. and/or M.P.'s mother made 9-1-1 calls to the Venus police department, the Frisco police department, and the Plano police department falsely claiming C.P. had been kidnapped. Randel testified that "CPS [had] to field calls from law enforcement about [M.P.] attempting to have Amber Alerts issued for [C.P.]."

- M.P. gave CPS "forged documents mixing different cause numbers from different types of courts."

- Prior to her incarceration for evading arrest, child endangerment, forgery of a financial instrument, and attempted kidnapping, M.P. sent Randel "numerous telephone calls, text messages and E-mail from a person . . . claiming to [be] Karen from a court in California demanding the location of [C.P.]." "Karen" claimed to be an arbitrator in California. Randel testified, "those text messages, phone calls and E-mails [ceased] since [M.P. was] incarcerated."

Moreover, regardless of whether M.P. believed the November 1, 2018 court proceeding was a trial or a hearing on Curran's motion for withdrawal as counsel, there is no dispute that M.P. did not appear in court on November 1, 2018.

On this record, we conclude the trial court could reasonably have determined that M.P. knew the trial date was December 3, 2018, and that M.P. elected to not appear at trial. We conclude sufficient evidence shows that M.P. had actual notice of the December 3, 2018 trial date. Accordingly, we conclude the trial court did not abuse its discretion by not granting M.P.'s motion for new trial, and the trial court's judgment is not void.

### M.P. Did Not Preserve for Appellate Review Her Constructive Notice Complaint

For the first time on appeal, M.P. complains her due process rights were violated because, in addition to not receiving actual notice, she also did not receive constructive notice of the December 3, 2018 trial date.

"[T]he rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error." *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2008). M.P. did not complain in the trial court that her right

–21–

to due process was violated because she did not have constructive notice of the trial date. Rather, she only argued that she did not have actual notice of the trial date due to ineffective assistance of counsel.[11] Accordingly, M.P.'s complaint on appeal that she did not receive constructive notice of the trial date has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a); *see also In re A.T.*, No. 05-16-00539-CV, 2017 WL 2351084, at *9 (Tex. App.—Dallas May 31, 2017, no pet.) (mem. op.); *In re L.M.I.*, 119 S.W.3d 707, 710—711 (Tex. 2003) (failure to raise constitutional due process challenge in trial court results in waiver and "allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved.").

However, even if preserved, M.P.'s complaint has no merit, because the evidence shows that M.P. had constructive notice of the trial date.

### M.P. Had Constructive Notice of the Trial Date

Service upon a party's attorney of record satisfies the notice requirements of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 21a(a). An attorney's knowledge of a trial setting is imputed to her client. *In re D.W.*, 353 S.W.3d 188, 192 (Tex. App.—Texarkana 2011, pet. denied); *see also Prof'l Sec. Patrol v. Perez*, No. 01-12-00506-CV, 2013 WL 4478020, at *3 (Tex. App.—Houston [1st Dist.] Aug. 20, 2013, no pet.) (mem. op.) ("Knowledge acquired by an attorney during the existence of an attorney-client relationship, while acting within the scope of his authority is imputed to the client."). Solomon, M.P.'s attorney of record, appeared at the trial; therefore, M.P.'s attorney obviously had notice of the trial date and that knowledge is imputed to M.P. *See In re D.W.*, 353 S.W.3d at 192. In addition, Solomon did not object to the case

---

[11] On appeal, M.P. does not raise the argument asserted in her motion for new trial that she had ineffective assistance of counsel.

proceeding to trial in her absence, and Solomon informed the trial court on the record that M.P. had notice of the trial date.

Curran, M.P.'s previous attorney, knew the case was set for trial for December 3, 2018. Curran specified the December 3, 2018 trial date in three motions for withdrawal of counsel he filed in the trial court. The trial court's order granting Curran's motion for withdrawal stated the trial date was December 3, 2018. Curran represented to the trial court that he had informed M.P. of the December 3, 2018 trial date on multiple occasions. Curran was present in the trial court with M.P. when the parties and the judge discussed the December 3, 2018 trial date at the September 24, 2018 permanency hearing. Curran received copies of the June 7 and September 24, 2018 permanency hearing orders, both of which stated the date of the trial was December 3, 2018. Curran's knowledge of the December 3, 2018 trial date is imputed to M.P. *See In re D.W.*, 353 S.W.3d at 192.

We conclude the evidence shows that M.P. had constructive notice of the December 3, 2018 trial date. Accordingly, we conclude the trial court did not abuse its discretion by not granting M.P.'s motion for new trial, and the trial court's judgment is not void.

## CONCLUSION

We conclude that M.P. failed to preserve for our review her complaint that her due process rights were violated because she did not have constructive notice of the trial date. However, even if M.P. had not waived that issue for appellate review, the record provides ample evidence that M.P. was provided actual notice and constructive notice of the December 3, 2018 trial date multiple times up through the date of trial and while trial was in progress. Accordingly, we conclude M.P. has not demonstrated that the trial court abused its discretion in allowing her motion for new trial to be denied by operation of law, and the trial court's judgment is not void. We resolve M.P's first and second issues against her.

We affirm the trial court's judgment.

/Ken Molberg/

KEN MOLBERG
JUSTICE

.

190044F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.P., A CHILD

No. 05-19-00044-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas
Trial Court Cause No. 469-30012-2018. Opinion delivered by Justice Molberg. Justices Whitehill and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 1st day of July, 2019.